**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHAHIDA RIZVI, individually
and doing business as Colonial
Motel,**

                   **Plaintiff,**

                   **v.**

**THE TOWN OF WAWARSING,**

                   **Defendant.**

**1:12-cv-1396
(GLS/RFT)**

_____

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Office of Mark D. Stern
P.O. Box 1028
Goshen, NY 10924

**FOR THE DEFENDANT:**
Carter, Conboy Law Firm
20 Corporate Woods Boulevard
Albany, NY 12211

**OF COUNSEL:**

MARK D. STERN, ESQ.

MICHAEL J. MURPHY, ESQ.
WILLIAM C. FIRTH, ESQ.

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Shahida Rizvi, individually and doing business as Colonial

Motel, brought this action against several defendants alleging six causes of

action.  (*See generally* Compl., Dkt. No. 1.)  All claims and defendants were dismissed on motion except for causes of action brought pursuant to 42 U.S.C. § 1983, alleging violations of the Equal Protection and dormant Commerce Clauses against defendant the Town of Wawarsing.  (Dkt. No. 35 at 15-16.)  Pending is the Town's motion for summary judgment on the remaining claims, (Dkt. No. 47), and Rizvi's cross motion to "amend and reinstate complaint against [former defendants] Scott Carlsen, Dan Johnson and Terry Houck, individually," (Dkt. No. 54).  For the reasons set forth below, the Town's motion is granted, and Rizvi's cross motion is denied.

## II. Background

### A. Facts[1]

Rizvi, who is a woman of Pakistani origin and Muslim, owns and operates the Colonial Motel.  (Pl.'s Statement of Material Facts (SMF) ¶¶ 2, 3, 7, Dkt. No. 53, Attach. 1.)  The Colonial Motel, which is located in the Town, has eighteen rooms that are regularly occupied by registered sex

---

[1] Unless otherwise noted, the facts are not disputed.  Also, as highlighted by the Town, (Dkt. No. 64, Attach. 5 at 2-5), Rizvi's failure to comply with Local Rule 7.1(a)(3) by admitting or denying each of the paragraphs in the Town's statement of material facts, (*compare* Dkt. No. 47, Attach. 2, *with* Dkt. No. 53), is not without consequences.  The Town's properly supported and uncontroverted facts are therefore deemed admitted.

2

offenders referred to it by the Ulster County Department of Social Services. (Def.'s SMF ¶¶ 7-9, Dkt. No. 47, Attach. 2.) In 2011, the Town enacted Local Law No. 2 of 2011 (hereinafter "Local Law"), which became effective January 1, 2012. (*Id.* ¶ 10; Local Law No. 2 of 2011, Dkt. No. 1 at 21-24.) The Local Law created a new chapter to the Town Code titled "Hotels, Motels, Boarding Houses and Bed & Breakfasts." (Dkt. No. 1 at 21.) Saliently, the Local Law regulates the aforementioned types of establishments within the Town's geography by, among other things, restricting occupancy "by the same guest or customer to no more than [thirty] consecutive days or [ninety] days in any individual calendar year" (hereinafter "the 30/90 rule"). (Def.'s SMF ¶ 10); Local Law No. 2 of 2011 § 71-7(B). In addition to Colonial Motel, three hotels/motels are within the ambit of the Local Law: Chelsea House, Continental Motel, and Honors Haven Resort and Spa. (Def.'s SMF ¶ 12.) Prior to the Local Law's effective date, each of the affected hotels/motels—four in number—was notified of the new ordinance. (*Id.* ¶ 38.)

After the Local Law went into effect, Chief Code Enforcement Officer Bryant Arms and subordinate officer Barron Berg "visited the Colonial Motel and all other motels/hotels within the Town . . . to help implement the

new law and to ensure that [it] was administered properly, including ensuring that the proprietors maintained a register of guests in the lobby with the names of the inhabitants." (*Id.* ¶¶ 40, 41, 47.) In March 2012, the Colonial Motel failed an inspection for failure to maintain a guest register consistent with the Local Law, and violations of the 30/90 day rule. (Dkt. No. 47, Attach. 14 ¶ 9.) Days later, Arms followed up and found substantial compliance with the guest register requirements but continuing violations of the 30/90 day rule. (*Id.* ¶ 10.) In April and May, appearance tickets were issued to the Colonial Motel. (Dkt. No. 47, Attach. 3 at 31, 35; Def.'s SMF ¶¶ 56-58.) On April 30, Arms was instructed by Town Supervisor Carlsen to issue appearance tickets to the Colonial Motel for violations of the 30/90 day rule. (Def.'s SMF ¶ 33; Dkt. No. 47, Attach. 11 at 42.) Carlsen also ordered Arms to withdraw an April appearance ticket, which concerned Colonial Motel's failure to apply for a license, and, consistent with Carlsen's directive, it was withdrawn. (Dkt. No. 47, Attach. 11 at 42-43, 45; Def.'s SMF ¶ 56.) On prior occasions, Arms was instructed by Town Counsel to issue tickets; such directives were not

unusual and regularly occurred. (Def.'s SMF ¶ 48.)[2]

## B. Procedural History

This action was commenced in the Southern District of New York, (*see generally* Compl.), but soon thereafter venue was changed to this District by stipulation of the parties, (Dkt. No. 14). Defendants, who, at that time, included Carlsen, Johnson, and Houck, the County of Ulster, and the Town, all filed pre-answer motions to dismiss the complaint. (Dkt. Nos. 18, 20.) Those motions were granted in part and denied in part, (Dkt. No. 35), and, following discovery, (Dkt. No. 46), the pending motions were filed, (Dkt. Nos. 47, 54).

## III. Standard of Review

---

[2] The following facts are provided merely for context. Prior to the passage of the Local Law, Carlsen, Johnson, and Houck all sought political office—in the case of Houck, re-election—in the Town. (Def.'s SMF ¶¶ 20, 25-26, 31-32.) In furtherance of their campaign, Carlsen, Johnson, and Houck published a political flyer that spoke to the presence of registered sex offenders in the Town. (*Id.* ¶ 32; Dkt. No. 47, Attach. 3 at 22.) Among other things, the flyer called for the adoption of "an ordinance to limit the stays [of sex offenders] in . . . motels/hotels throughout the Town." (Dkt. No. 47, Attach. 3 at 22.) Houck was a member of the Town Board of the Town of Wawarsing during the relevant period of time. (Def.'s SMF ¶ 20.) Houck ultimately proposed the Local Law after some discussion amongst members of the Town Board and Town Attorney William Collier, who reviewed a similar ordinance in the neighboring Town of Ellenville and drafted the Local Law. (*Id.* ¶¶ 14, 15, 16, 18, 24.) Although not a member of the Board when the Local Law was considered and eventually enacted, Johnson was, as referenced above, in the midst of a political campaign seeking election to the Board at that time. (*Id.* ¶¶ 25-26.) Carlsen, who also was not a Town official when the Local Law was passed, sought election as Town Supervisor, a position to which he was elected; he assumed office on January 1, 2012. (*Id.* ¶¶ 31-33.)

## A. Leave to Amend

Rule 15(a) provides that, where a party seeks to amend her pleading before trial, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "'[w]here a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" *Laskowski v. Liberty Mut. Fire Ins. Co.*, No. 5:11-cv-340, 2013 WL 5127039, at *2 n.3 (N.D.N.Y. Sept. 12, 2013) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id.* at *2 (internal quotation marks and citation omitted). Further, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

## B. Summary Judgment

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Cross Motion For Leave to Amend the Complaint

Before reaching the Town's motion for summary judgment, the court addresses Rizvi's cross motion to amend. Notably, Rizvi argues that she should be granted leave to amend her complaint under the lenient standard of Rule 15 to include requests for injunctive relief and punitive damages, "clarif[y] the constitutional claims . . . by adding an additional claim for conspiracy to violate . . . civil rights," and "reinstate a claim against the individual capacity defendants." (Dkt. No. 56 at 17.) According to Rizvi, through discovery, she has unearthed facts that support her proposed amendments. (*Id.*) For reasons explained herein, Rizvi's cross motion is denied.

Here, no argument in support of good cause has been made, let alone demonstrated to the court's satisfaction. As explained above, the liberal standard of Rule 15 does not govern where, as here, a scheduling

order is entered pursuant to Rule 16.  *See supra* Part III.A; (Dkt. No. 42.)
A scheduling order "may be modified only for good cause and with the
judge's consent."  Fed. R. Civ. P. 16(b)(4).  Rizvi fails to appreciate that her
cross motion is not measured against Rule 15, and the court will not
speculate as to what arguments she may have made had she accurately
identified the standard of review.[3]  Her failure to offer any explanation of
good cause justifies denial of her motion, which seeks to make substantial
amendments.  In any event, the facts and circumstances of the case
suggest that good cause cannot be shown.

As Rizvi notes, (Dkt. No. 56 at 17-18), the court's January 15, 2013
Memorandum-Decision and Order, which ruled on defendants' pre-answer
motions, expressly provided that dismissal of the claims against the
individual defendants was "without prejudice to Rizvi's right to seek
permission to amend her Complaint if she c[ould], in good faith, allege
sufficient facts to cure [certain] deficiencies," (Dkt. No. 35 at 8 n.6).

---

[3] Although not referenced in her memorandum of law, Rizvi has filed an attorney affidavit asserting that "[l]eave to amend and to reinstate could not be made until the depositions were completed and the facts gathered," and then, by footnote, contending that she has not yet had the opportunity to depose nonparty witness Berg. (Dkt. No. 55 ¶ 10, at 5 n.1.) While these allegations could potentially go to whether good cause has been shown, for the reasons explained below, the court is not persuaded that leave to amend should be granted at this belated time.

However, following the issuance of that decision, a scheduling order was entered setting the amendment deadline as May 1, 2013 and the discovery deadline as January 4, 2014. (Dkt. No. 42 at 1.) Rizvi did not seek leave to amend or request an extension of the deadline to do so prior to May 1, 2013; however, some six months after the amendment deadline passed, she did successfully seek an extension of the discovery period, which pushed out the discovery deadline to April 1, 2014. (Dkt. Nos. 45, 46.) It was not until July 7, 2014, following the Town's filing of the pending summary judgment motion, that Rizvi sought to amend her complaint. (Dkt. Nos. 47, 54.) While Rizvi describes the amendment as not altering the theory of the case, (Dkt. No. 56 at 18), she now seeks to make substantive changes to her complaint by alleging entirely new causes of action for, among other things, conspiracy to violate civil rights and violations of the Privileges and Immunities Clauses of the United States and New York Constitutions, (Dkt. No. 58 ¶¶ 122-40). The court also notes that Rizvi's proposed amended pleading is not compliant with the Local Rules, which require that "[t]he motion must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a

9

redline/strikeout version of the pleading sought to be amended or through other equivalent means." N.D.N.Y. L.R. 7.1(a)(4); (Dkt. No. 58.) For all of these reasons, Rizvi's cross motion is denied.

## B. The Town's Motion For Summary Judgment

The Town argues that it is entitled to summary judgment on Rizvi's remaining two claims. (Dkt. No. 47, Attach. 15 at 2-14.) With respect to the dormant Commerce Clause claim, the Town contends that no record evidence can support Rizvi's showing of the requisite "disparate burden" to support her claim, or, alternatively, that the Local Law's burden on interstate commerce is not clearly excessive in relation to the putative local benefits. (*Id.* at 2-6.) As for the equal protection claim, the Town asserts that the facially-neutral Local Law was not selectively enforced nor resulted in intentionally discriminatory disparate treatment. (*Id.* at 7-14.)

In opposition, Rizvi summarily, and without citation to record evidence, claims that sworn statements "show[] that the burden imposed upon interstate and intrastate commerce by [the Local] Law . . . is clearly excessive in relation to any putative local benefits to be gained." (Dkt. No. 56 at 11-12.) By so arguing, Rizvi has glossed over the threshold issue of whether she can demonstrate a disparate burden, instead skipping directly

to the balancing test.  As for her equal protection claim, Rizvi contends that, despite violations at Honors Haven Resort and Spa and the Continental Motel, neither was cited while she was singled out and cited for violations of the Local Law.  (*Id.* at 13-14.)  She also asserts, without pointing to any record support, that she was "singled out on the basis of her advancing age, her sex, her national origin, and religion by the Town, all in violation of her fundamental rights."  (*Id.* at 16.)  Although it appears that both parties misapprehend, to a greater or lesser degree, the parameters of the Equal Protection Clause as they apply here, the court agrees with the Town that it is entitled to summary judgment on both of the remaining claims.

> 1. *Dormant Commerce Clause*

In terms of the dormant Commerce Clause, "[a] regulation that evinces discriminatory purpose against interstate commerce, or unambiguously discriminates in its effect . . . almost always is invalid *per se.*" *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 431 (2d Cir. 2013) (internal quotation marks and citation omitted).  On the other hand, the legislation may run afoul of the dormant Commerce Clause if, despite facial neutrality, "it imposes a burden on interstate commerce

incommensurate with the local benefits secured." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 108 (2d Cir. 2001). Where, as here, the plaintiff seeks to establish the latter infirmity,[4] (Dkt. No. 56 at 11-12), the so-called *Pike* balancing test guides the analysis. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

"For a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Sorrell*, 272 F.3d at 109 (citations omitted). The Second Circuit recognizes three circumstances in which a facially-neutral regulation imposes an incidental burden on interstate commerce: "(1) when the regulation has a disparate impact on any non-local commercial entity; (2) when the statute regulates commercial activity that takes place wholly beyond the state's borders; and (3) when the challenged statute imposes a regulatory requirement inconsistent with those of other states." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 50 (2d Cir. 2007). Where "no such unequal burden [is] shown, a reviewing court need not proceed

---

[4] The court previously dismissed Rizvi's claim to the extent that it was premised upon overt discrimination against interstate commerce. (Dkt. No. 35 at 14 n.11.)

further." *Sorrell*, 272 F.3d at 109.

Here, the Town has met its summary judgment burden by "point[ing] to an absence of proof on plaintiff's part," which triggers the plaintiff's obligation to "designate specific facts showing that there is a genuine issue for trial." *Smalls v. Conn. Dep't of Corr.*, No. 3:10CV962(DFM), 2012 WL 774952, at *2 (D. Conn. Mar. 8, 2012) (internal quotation marks and citations omitted); *accord Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). In response to the Town's motion, Rizvi has failed to identify any evidence supportive of any one of the three avenues for proving an incidental burden on interstate commerce,[5] let alone a disparate burden that is "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. Rizvi primarily focuses her efforts on attacking the Town's proffer of putative local benefits, namely community safety and welfare. (Dkt. No. 56 at 11-13.) Her argument puts the cart before the horse and overlooks the threshold showing she must make: that the regulation imposes a burden on interstate commerce. For all of these

---

[5] It is worth noting that Rizvi uses nearly five pages of her memorandum of law reciting, by bullet point, what she asserts are disputed issues of fact that preclude summary judgment. (Dkt. No. 56 at 5-9.) In the list of purported factual issues that follows, Rizvi fails to hone in on the issue that is central to the dormant Commerce Clause claim: whether she can show a "disparate burden" under any of the circumstances articulated by the Second Circuit.

13

reasons, summary judgment is appropriate on Rizvi's dormant Commerce Clause claim.

### 2. *Equal Protection*

For reasons that are not clear, the parties argue Rizvi's equal protection claims under the two distinct theories of selective enforcement and class-of-one. Quite frankly, the court is at a loss. On the one hand, Rizvi argues—in response to arguments for summary judgment as to a selective enforcement theory—that she was targeted solely because the Colonial Motel houses sex offenders. (Dkt. No. 56 at 13-14.) The evidence and theory advanced by Rizvi would appear to support a selective enforcement claim that is not dependent on protected class membership. On the other hand, Rizvi claims—in opposition to the Town's motion on a class-of-one theory—that the Local Law "burdens her fundamental personal rights" and that she "has been singled out on the basis of her advancing age, her sex, her national origin, and religion." (*Id.* at 15-16.)

Rizvi defends the selective enforcement theory by pointing only to: (1) deposition testimony of Arms that it was common knowledge that sex offenders stayed at the Colonial Motel for extended periods of time and

14

that such information was part of the reason why the Local Law was drafted; and (2) evidence to suggest that Houck said that the Local Law came into being after it was discovered that sex offenders were staying in hotels/motels in the Town and that he was not aware of sex offenders staying anywhere other than the Colonial Motel. (*Id.* at 14; Dkt. No. 59, Attach. 7 at 17; Dkt. No. 59, Attach. 8 at 30; Dkt. No. 59, Attach. 9.) Apparently, Rizvi's sole contention is that the Local Law was selectively enforced as to the Colonial Motel because she housed sex offenders, which, according to her, constitutes treatment with "'impermissible animus.'" (Dkt. No. 56 at 14 (quoting *Harris v. Buffardi*, No. 1:08-cv-1322, 2011 WL 3794235, at *9 (N.D.N.Y. Aug. 24, 2011)).) Rizvi contends that a class-of-one theory is viable because she was targeted based on age, sex, national origin, and religion. (Dkt. No. 56 at 16.)

Despite the distinction drawn by the parties between "selective enforcement" and "class-of-one," Rizvi appears to assert a garden variety selective enforcement claim—based upon her membership in a protected class—and a class-of-one selective enforcement claim—based upon the Colonial Motel's affiliation with sex offenders. No matter the theory, Rizvi's equal protection claim, as a factual matter, relies on the notion that she

15

was treated differently than other businesses within the scope of the Local Law with respect to enforcement thereof. (Compl. ¶ 41 ("Plaintiff . . . has been singled out on the basis of her sex, age, national origin, and religion.").)

The Equal Protection Clause prohibits "selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). In addition to the foregoing garden variety selective enforcement claim, a plaintiff may assert "a 'class of one' selective treatment claim without asserting membership in a protected class," but, to be successful, the plaintiff "must demonstrate, *inter alia*, that the defendant[] *intentionally* treated h[er] differently from others similarly situated without any rational basis." *Price v. City of N.Y.*, 264 F. App'x 66, 68 (2d Cir. 2008) (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 751 (2d Cir. 2001)). Selective enforcement may be proven by "both direct and circumstantial evidence of discriminatory intent." *Chabad Lubavitch of*

16

*Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014).

Here, the Town is entitled to summary judgment. The record is devoid of any proof that the Local Law was selectively enforced, which is fatal to Rizvi's claim. When deposed in March 2014, Arms testified that, upon inspection of its guest register the week prior to his deposition, the Continental Motel was found to be in violation of the 30/90 day rule. (Dkt. No. 59, Attach. 7 at 1, 25.) While the temporal proximity to Rizvi's action—filed in July 2012 and based upon selective enforcement in April and May 2012, (*see generally* Compl. ¶¶ 23, 30)—is obviously remote from the violation identified by Arms two years later, in March 2014, Arms also testified that he was directed by then-Town Supervisor Lenny Distel to issue a ticket, which Arms intended to do in due course, (Dkt. No. 59, Attach. 7 at 23, 25-28[6]). Aside from this single incident,[7] which cannot

---

[6] An Arms affidavit submitted in reply, which the court accepts, *see Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (explaining that a court may accept evidence submitted with a reply where there is no surprise to the nonmoving party, the nonmoving party does not seek to file a sur-reply to respond to the evidence, and the nonmoving party makes no claim that it has contrary evidence), in essence reiterates what Arms said during his deposition. (*Compare* Dkt. No. 59, Attach. 7 at 23, 25-28, *with* Dkt. No. 64, Attach. 3 ¶¶ 5-6.)

[7] In fairness to Rizvi, Arms also testified about a violation of a different provision of the Local Law—which required affected business to obtain and retain identification for each guest—at Honors Haven Resort and Spa. (Dkt. No. 59, Attach. 7 at 22-23.) While Arms was

17

support a claim of selective enforcement at the time the Local Law was enforced against the Colonial Motel, the record is devoid of any evidence that a business covered by the Local Law was in violation of the 30/90 day rule. Moreover, it is beyond dispute that each business affected by the Local Law was provided notice of the new law's requirements before the effective date and was inspected to assure compliance. (Def.'s SMF ¶¶ 38, 39, 47.) In a nutshell, Rizvi has failed to "demonstrate that laws were not applied to h[er] as they were applied to similarly situated individuals and that the difference was intentional and unreasonable." *Deegan v. City of Ithaca*, 444 F.3d 135, 146 (2d Cir. 2006). Therefore, whether pursued under a protected-class membership theory or on class-of-one grounds, Rizvi's selective enforcement equal protection claim fails.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Rizvi's cross motion to amend (Dkt. No. 54) is

---

eventually directed to issue a ticket to Honors Haven Resort and Spa for the violation, as of July 2014 he had not done so because of a backlog of work and shortage of enforcement officers. (Dkt. No. 64, Attach. 3 ¶¶ 6, 11.) Honors Haven Resort and Spa's violation of the identification requirement is not germane to Rizvi's selective enforcement claim, however, because that portion of the Local Law was not enforced against the Colonial Motel and "differential treatment[ is] a prerequisite to selective enforcement." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004).

**DENIED**; and it is further

**ORDERED** that the Town's motion for summary judgment (Dkt. No. 47) is **GRANTED** and Rizvi's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 23, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court